WALLER, Justice,
for the Court:

SUMMARY

¶ 1. This case arises on interlocutory appeal from an order of the Harrison County Family Court denying a motion by Michael D. Harrison seeking a transcript of the testimony in the family court adjudicatory hearing in which J.E., a minor, was found to be an abused child. Michael also requested additional records from the family court pertaining to the case. Michael, indicted by the Harrison County Grand Jury for the sexual battery of J.E., contends that he needs the transcript and the records in order to fully prepare his defense. Aggrieved by the decision of the family court, Michael assigns the following as error:
WHETHER MICHAEL HARRISON, AS A DEFENDANT IN A SEXUAL BATTERY CASE PENDING IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI CAN COMPEL THE PRODUCTION OF DOCUMENTS AND TRANSCRIPTS OF THE TESTIMONY GIVEN BY THE PROSECUTRIX AND OTHER WITNESSES AT HEARINGS IN THE FAMILY COURT OF HARRISON COUNTY, MISSISSIPPI
After a careful review of the briefs and record in this matter, we reverse and remand the decision of the lower court.

STATEMENT OF THE FACTS

¶ 2. On April 8, 1992, a petition for abuse and/or neglect of J.E., C.E., S.E., (all female), and M.E., (male), all minor children of Dawn Evans (“Dawn”) was filed in the Family Court of Harrison County. J.E. was six years old at the time the first petition was filed. The children have been under the jurisdiction of the family court since that date and under the on-going supervision of the Harrison County Department of Human Services (DHS) since August, 1992. The children were placed in foster and/or relative care at different times, but for the most part they remained in the custody of Dawn and Michael. Because Michael Harrison (Michael) was alleged to be the father of M.E., the investigation naturally included Michael [1]
¶ 3. On August 29, 1996, petitions were filed in the family court alleging that J.E. and C.E. were sexually abused by Michael and alleging that M.E. was neglected because of the abuse sustained by his sisters. In September, 1995, the DHS, by amended petition, alleged that J.E. was sexually abused by Michael and that C.E. was neglected because she had frequently visited in the same environment in which J.E. was abused. At the March 19, 1996, hearing, J.E. testified along with other witnesses. Certain medical records and matters contained in the family court file were accepted into evidence. The family court adjudicated J.E. to be an abused child, at the hands of Michael, and adjudicated C.E. and M.E. as neglected. According to the State’s brief, the attorney now representing Michael represented him at this youth court hearing.
*549 ¶ 4. On March 27,1996, Michael was indicted by the Harrison County Grand Jury on one count of sexual battery allegedly committed against J.E. The case bears cause number B 2401 96 00353 on the docket of the First Judicial District of Harrison County. The indictment alleges that the acts occurred on or about November, 1992.
¶ 5. Michael petitioned the family court for release of “all records regarding the above minor and in support of said petition.” Evidently, Michael had sought these records from the circuit court through discovery. According to Michael, the circuit court believed the matters to be discoverable, but that the request should properly be made to the family court. At the September 18,1996, hearing on this request, Michael requested, through counsel, that all the records concerning J.E., as well as those records concerning C.E., be released to the circuit court and made available to him for trial preparation. Additionally, Michael sought a transcript of the March 19, 1996, adjudication hearing. Argument before the family court indicated that Michael had reason to believe that J.E.’s statements to various individuals regarding the alleged sexual battery were inconsistent and that the child’s grandmother was the driving force pushing J.E.’s accusations. The family court denied Michael’s request, by Order, on September 24, 1996. The accompanying Opinion stated that “the records of the Youth Court are diselosable for only extremely limited reasons and to extremely limited individuals” and that Michael had not met his burden of showing that the release of the records was in the best interest of the child, as required by the applicable statute found at section 43-21-261 of Mississippi Code Annotated. From this Order Michael appeals.

DISCUSSION OF THE LAW

¶ 6. Michael contends that he should be allowed to compel production of documents, medical records, and transcripts of testimony which are presently in the possession of the Family Court of Harrison County. He argues that he must have those items to assist him in the preparation of his defense against a charge of sexual battery pending in the Circuit Court of Harrison County arising out of the family court proceedings. Michael frames his argument in terms of his right of confrontation as embodied in the Sixth Amendment of the United States Constitution and Art. 3 section 26 of the Mississippi Constitution, and by inference, his right to compulsory due process and Fourteenth Amendment due process, asserting, additionally that this information is discoverable pursuant to Uniform Circuit and County Rule 9.04.
¶ 7. The instant case presents an issue not confronted by this Court heretofore. The issue advanced by Michael implicates, on the one hand, our statutory prohibition regarding the disclosure of youth court records. On the other hand, this issue implicates a defendant’s constitutional rights to confrontation and, in a broader context, due process, as well our statutory discovery rules.
¶ 8. Section 43-21-261 of the Youth Court Act,[2] regulating the disclosure of records involving children, states in relevant part:
(1) Except as otherwise provided in this section, records involving children shall not be disclosed, other than to necessary staff of the youth court, except pursuant to an order of the youth court specifying the person or persons to whom the records may be disclosed, the extent of the records which may be disclosed and the purpose of the disclosure. Such court orders for disclosure shall be limited to those instances *550 in which the youth court concludes, in its discretion, that disclosure is required for the best interests of the child, the public safety or the functioning of the youth court and then only to the following persons:
[[Image here]]
(c) A judge of any pther court or members of another court staff;
Miss.Code Ann. § 43-21-261 (Supp.1996).
¶ 9. At odds with the above quoted statute is Michael’s right to confront the witnesses against him and his right to due process, both of which are granted to him by the federal and state constitutions, and the right to have such made available to him through discovery. The Sixth Amendment to the United States Constitution specifies that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor. ...” U.S. Const, amend. VI. Article 3 section 26 of the Mississippi Constitution affords the same guarantee to criminal defendants. In the context of the instant case, “[t]he right to impeach or attack a witness’ credibility is secured both by the Mississippi Rules of Evidence and the confrontation clauses of the state and federal constitutions.” Brown v. State, 690 So.2d 276, 292 (Miss.1996). The Fourteenth Amendment states “nor shall any State deprive any person of life, liberty or, property, without due process of law_” U.S. Const, amend. XIV. Article 3 section 14 of the Mississippi Constitution grants the same protection.
¶ 10. The Uniform Rules of Circuit and County Court Practice state that:
[T]he prosecution must disclose to each defendant or to defendant’s attorney, and permit the defendant or defendant’s attorney to inspect [and] copy ... upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
1. Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together wdth a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness.
URCC 9.04.
¶ 11. This Court has addressed the disclosure of youth court records in two cases. In Daniels v. Wal-Mart Stores, Inc., 634 So.2d 88 Miss. (1983), Daniels had been adjudicated as delinquent for shoplifting from Wal-Mart. Id. at 91. After this adjudication, Daniels sued Wal-Mart for saying that he had shoplifted. Id. at 89.- At the civil trial, Daniels asserted his right of confidentiality, arguing that the youth court proceeding could not be used against him. Id. at 91. This Court disagreed, ruling that a juvenile’s record could be used to impeach him in the course of the civil trial. Id. at 91-93. The Court pointed out, first, that a close reading of section 43-21-261 specifically authorizes the youth court to order release of records to the circuit court. Id. Even had the statute not allowed disclosure in Daniels’ case, the Court further observed that
The right of “confidentiality” on behalf of the child is a “qualified” and not an “absolute” privilege_ Daniels’ action of initiating this slander suit lifted the veil of confidentiality, thereby exposing himself to the harsh realities of litigation. If Daniels wished for the youth court proceedings to be kept confidential, then his actions should have been in keeping with such confidentiality. Daniels cannot bring the incident to court and expect to present only part of the picture. Justice requires a total view.
Id. at 93.
¶ 12. In Yarborough v. State, 614 So.2d 1215 (Miss.1987), Yarborough was convicted of raping his daughter. Two years later he filed a Motion for Post-Conviction Relief, contending that his daughter had recanted her testimony against him. Id. at 1215. At the hearing, Yarborough’s daughter admitted that she had, indeed, lied at the earlier trial and had not been raped by her father. Id. at 1216. When cross-examined by the State, the child acknowledged that she had testified that her father had raped her at both the *551 youth court adjudicatory hearing and the criminal trial. Id. Where the prosecution obtained the youth court records that were used for impeachment was not disclosed by the record and no prior approval was obtained from the youth court. Id. at 1217. In his appeal of the trial court’s denial of his PCR Motion, Yarborough designated as error the trial court’s permitting this testimony to come in without the prior permission of the youth court, as required by section 43-21-261. Id.
¶ 13. This Court held that, in response to the question of whether the circuit court must require presentation of a ticket from the youth court before impeachment testimony is allowed, such authorization was unnecessary. Id. at 1219. The Court reasoned that the disclosure made in the case was the sort of disclosure the youth court ought to authorize. Id. Yarborough’s assignment of error was, therefore, denied by this Court. Id.
¶ 14. The facts of these two cases are clearly distinguishable from the facts in the instant case. Both Daniels and Yarborough, however, recognized the tension between the statutory rights respecting confidentiality of youth and family court records and the need, however rare, for disclosure of such records in the course of a trial. This Court, holding that youth court records could be used for impeachment purposes, stated that
[t]he sort of disclosure made here is one the youth court ought authorize.... The credibility of K.Y.’s recanting testimony is the tightrope upon which Yarborough’s conviction stands or falls. The reasoning and authorities establish that the youth court would abuse its discretion if it did not authorize disclosure here.
Yarborough, 514 So.2d at 1219. The implication of this statement is that this Court, at the very least, contemplated the notion that a youth court ought to disclose youth court records when such can provide the basis for the impeachment of a witness, as in the instant case.
¶ 15. The United States Supreme Court addressed almost precisely the same issue raised in the instant case in Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In Ritchie, the defendant was charged with various sexual offenses against his thirteen year-old daughter. Id. at 43, 107 S.Ct. at 994. During pretrial discovery, Ritchie requested access to the Children and Youth Services (“CYS”) records concerning his daughter, seeking favorable witnesses’ names and unspecified exculpatory material, as well as certain medical reports that were compiled during the investigation. Id. at 43-44, 107 S.Ct. at 994. Ritchie was denied access to the records pursuant to a Pennsylvania statute which mandated that such records were to remain confidential, subject to certain specific exceptions. Id. at 44, 107 S.Ct. at 994. At trial, Ritchie was convicted on all counts, with the primary witness against him being his daughter. Id.
¶ 16. On appeal to the Pennsylvania Superior Court, Ritchie argued that the failure to disclose the CYS files violated the Confrontation Clause of the Sixth Amendment, as applied to the States through the Due Process Clause of the Fourteen Amendment. Id. at 45, 107 S.Ct. at 995. The court agreed with Ritchie that there had been a constitutional violation and vacated the conviction, remanding for further proceedings. Id. The court, however, ruled that the right of confrontation did not entitle Ritchie to the full disclosure he pursued, mandating, in part, a limited inspection of the files by the trial judge in camera, with the verbatim statements of the daughter to the CYS counselor being made available to him Id.
¶ 17. On appeal by the Commonwealth, the Supreme Court of Pennsylvania concurred that the conviction must be vacated and the case remanded. Id. at 46, 107 S.Ct. at 995. The court, however, disagreed with the limited inspection allowed by the Superior Court. Id. Rather, the court concluded that Ritchie, through counsel, was entitled to review the entire file to search for any beneficial evidence. Id.
¶ 18. The United States Supreme Court, in affirming in part and reversing and remanding in part, analyzed the issue raised regarding the disclosure of youth files, first, under the Confrontation Clause and, second under Fourteenth Amendment due process. As to *552 the Confrontation Clause, the Supreme Court stated:
Ritchie argues that he could not effectively question his daughter because, without the CYS material, he did not know which types of questions would best expose the weaknesses in her testimony. Had the file been disclosed, Ritchie argues that he might have been able to show that the daughter made statements to the CYS counselor that were inconsistent 'with her trial statements....
The Pennsylvania Supreme Court accepted this argument, relying in part on our decision Davis v. Alaska[, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)], supra.
Id., 480 U.S. at 51-2, 107 S.Ct. at 998. The plurality held that the denial of access to the CYS records did not violate the Confrontation Clause. Id. at 52, 107 S.Ct. at 998-99. Justice Powell, writing for the plurality, maintained that the broad confrontation adopted by the Pennsylvania Supreme Court would “transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery.” Id. The plurality stated that the right to confrontation is a trial right and the “right to confront one’s accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.” Id. at 53, 107 S.Ct. at 999.
¶ 19. The Supreme Court did not end its inquiry into this issue with its analysis of the Confrontation Clause, next addressing the Pennsylvania Supreme Court’s suggestion that the failure to disclose the CYS file violated the Sixth Amendment’s guarantee of compulsory process. Id. at 55, 107 S.Ct. at 1000. The Supreme Court declined to address this issue under the Compulsory Process Clause, opting instead to evaluate this claim, as it has traditionally treated such claims as Ritchie’s, under the broader protections of the Due Process Clause of the Fourteenth Amendment. Id. at 56, 107 S.Ct. at 1000-01. The majority framed its discussion in terms of the Brady v. Mainland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), line of cases which mandates that the government has the obligation to turn over evidence in its possession that is both favorable to the defendant and material as to guilt or punishment, stating that “‘[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,’ ” adding that a reasonable probability is a “‘probability sufficient to undermine confidence in the outcome.’ ” Id., 480 U.S. at 57, 107 S.Ct. at 1001 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)).
¶ 20. The Ritchie majority concluded that Pennsylvania’s statute did not prevent disclosure in all circumstances, contemplating some use of CYS records in judicial proceedings. Id., 480 U.S. at 57-8, 107 S.Ct. at 1002-02. The majority thus held that Rit-chie was entitled to have the trial court review the CYS files to determine if it contained any information that would have changed the outcome of the trial. Id. at 58, 107 S.Ct. at 1001-02. Further, the majority, in responding to the Pennsylvania Supreme Court’s holding that defense counsel must be allowed to examine all of the confidential information for relevance, reiterated the rule of law that “[a] defendant’s right to discover exculpatory evidence does not include the unsupervised authority to search through the [State’s] files” Id. at 59, 107 S.Ct. at 1002. The majority noted that under Brady v. Maryland, supra, the State decides, in response to the accused’s request for exculpatory material, which information must be disclosed and that, unless defense counsel becomes aware that other exculpatory information was withheld and brings it to the court’s attention, the State’s decision is final. Id. (citing Brady, supra). The majority found that Ritchie’s interest in being assured a fair trial, as well as the Commonwealth’s compelling interest in protecting child abuse information, would be fully protected by requiring that the CYS files be submitted to the trial court for in camera review. Id. at 60, 107 S.Ct. at 1003.
¶21. The procedure thereby adopted by the majority was to make the CYS files available to the trial court to review in camera for information that probably would have changed the outcome of the trial. Id. at 58, 107 S.Ct. at 1001-02. If so, then Ritchie was *553 to receive a new trial. Id. In a new trial, any information deemed material should be released to defense counsel, with the duty to disclose being ongoing, because information that may be appraised as immaterial upon first examination may become important as the trial progresses and such information should be released to insure the fairness of the trial. Id. at 60, 107 S.Ct. at 1003.
¶ 22. We find the reasoning in Ritchie persuasive. Like our statute section 43-21-261, the Pennsylvania statute did not grant absolute confidentiality, but provided for disclosure in certain circumstances. Ritchie, 480 U.S. at 57-8, 107 S.Ct. at 1001-02. In the instant case, the family court judge opted for a narrow reading of our statute as it relates to disclosure of youth court records when required for the best interest of the child, the public safety, and the functioning of the youth court. On the basis of the reasoning advanced in Ritchie, in light of Michael’s constitutional rights, we opt for a broader reading of Mississippi Code Annotated section 43-21-261(1). In adopting a broader reading of this statute, Ritchie is instructive:
Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances. This is not a case where a state statute grants CYS absolute authority to shield its files from all eyes. Rather the Pennsylvania law provides that the information shall be disclosed in certain circumstances.... Given that the Pennsylvania Legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions.
Id. at 57-8, 107 S.Ct. at 1001-02 (citations omitted). We believe that where the issues are weighty, as here, the best interest of the child, as well the proper and just functioning of our youth court system, demands that Michael have limited access to the materials he seeks. This provides for an expeditious resolution of this criminal matter, which is not only in the best interest of J.E. and essential to the functioning of the youth court system, but, in a much larger sense, is important to the interests of our system of justice. If we follow the advice and counsel of the State, only a portion of the picture of Michael’s case is presented to the trial court. As we stated in Daniels, supra, “[jjustice requires a total view.” Daniels, 634 So.2d at 93. Therefore, we find that the family court judge abused his discretion in denying Michel’s motion on the basis of an overly narrow interpretation of Mississippi Code Annotated section 43-21-261(1).
¶ 23. As such, we adopt the procedure advanced in Ritchie, supra. Therefore, Michael is entitled to the disclosure of information relevant to his defense before trial. The trial judge will inspect the records to determine if there is any information material to Michael’s case. Such information will be disclosed to Michael. However, Michael has no right to full disclosure or inspection of the agency records. Also, as noted in Ritchie, this duty to disclose is an ongoing duty, as information deemed irrelevant upon first inspection may later become important. By following the procedure of submitting the confidential family court records to the circuit court judge for in camera inspection and the disclosure of any information that is relevant to Michael’s defense to Michael, the State’s interest in the confidentiality of such records is protected, our statutory scheme is satisfied, our youth courts function within constitutional parameters, and our rules of discovery are honored, while allowing Michael limited access to information which might prove vital to his defense.

CONCLUSION

¶ 24. The instant case presents the clash of two extremely important’ interests — the State’s interest in the continued confidentiality of J.E.’s family court records and the equally compelling interest of Michael that he receive a fair trial. In the instant case, Michael asks for too much — complete access to the family court files of J.E., as well as other materials — and the State wants him to have too little — no access at all to any of the information in the family court files until well into the trial when such information may have little use or effect. After a careful weighing of the competing interests, in light *554 of statutory and case law, the decision of the family court is reversed and remanded for proceedings consistent with the principles articulated herein.
¶ 25. REVERSED AND REMANDED.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, JAMES L. ROBERTS, Jr., SMITH AND MILLS, JJ., CONCUR.
McRAE, J., CONCURS IN RESULT ONLY.

. In a separate paternity hearing, in 1996, DNA ' testing established that Michael was not the father of the child. The other children were from relationships between Dawn and other men.

. The Harrison County juvenile court was statutorily designated as a “Family Court” in 1964 and operates under the provisions of sec. 43-23-1 et seq., which in some respects are different from the provisions of the Youth Court Act, sec. 43-21-1 et seq. The statutes creating the Harrison County Family Court were not repealed when the old Youth Court Act was repealed in 1979; however, in the revised act, the youth court was made a division of the family court in counties with a family court. Miss.Code Ann. § 43-21-107(1) (General Laws of 1979). See Editor’s Note, sec. 43-23-55. The provisions of the Youth Court Act, including those involving confidentiality of records, sec 43-21-261 (General Laws of 1979 as amended), apply equally to all youth court divisions, whether they be divisions of county and chancery court, as in the other 81 counties, or of the Harrison County Family Court.